1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

----oo0oo----

11
12

D.M.R.D.,

13

           Petitioner,

14

     v.

15

ANDREWS, et al.,

16

           Respondents.

17

No. 1:26-cv-00081-WBS-CSK


MEMORANDUM AND ORDER RE:
PETITIONER'S MOTION FOR
TEMPORARY RESTRAINING ORDER

18

----oo0oo----

19
20
21
22
23

        Before the court is petitioner's motion for a temporary
restraining order.  Petitioner asks the court to order his
immediate release from custody and to enjoin the government from
re-arresting him without a hearing before a neutral decision-
maker.  (See Docket No. 3 at 9.)

24
25
26
27

        It is undisputed that petitioner illegally entered the
United States without inspection on November 30, 2023.  (See id.
at 10.) The Department of Homeland Security ("DHS") thereafter
admitted him into custody before releasing him on his own

28

1

recognizance.  (See id. at 10-11.)

Subsequently, petitioner settled in San Francisco, California.  (See id. at 11.)  He represents that he has complied with the terms of his release, but he received a citation on June 30, 2025, for misdemeanor battery.  (See id.)

On October 23, 2025, petitioner arrived for a scheduled check-in appointment with Immigration & Customs Enforcement ("ICE").  (See id.)  At this appointment, ICE re-detained him on the grounds that he had violated the terms of his release by committing said battery on June 30, 2025.  (See id.)

On January 6, 2026, petitioner filed the instant motion.  Petitioner has an asylum case that is currently pending; his hearing in that matter is currently set for January 10, 2029. (See id.)

I.    Temporary Restraining Order

"The standard for a [temporary restraining order] is the same as for a preliminary injunction."  Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The last two factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418,

2

435 (2009).

Likelihood of success on the merits is "the most important factor in determining whether a preliminary injunction is warranted." Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks omitted). "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy." Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation omitted). A mere possibility of success is insufficient to satisfy this factor; instead, a petitioner must demonstrate "a strong likelihood of success on the merits." Save Our Sonoran, Inc. v. Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

Petitioner argues that even if he raises only "'serious questions' as to the merits of his claims," the court can grant relief if the "balance of hardships tips 'sharply' in his favor." (Docket No. 2-1 at 10 (citing Alliance for the Wild Rockies v. Cottrell, 632 F. 3d 1127, 1135 (9th Cir. 2011).) This is inconsistent with Winter.

In Winter, the Supreme Court set forth a four-part test for determining when the grant of a preliminary injunction is warranted. See 555 U.S. at 20. Three years later, despite the Supreme Court's admonition, the Ninth Circuit held that the "serious questions" test survived Winter. See Cottrell, 632 F. 3d at 1131-32. Just last year, the Supreme Court went back and held that, "absent a clear command from Congress, courts must adhere to the traditional four-factor test" for granting a

3

preliminary injunction articulated in <u>Winter</u>.  <u>Starbucks Corp. v.</u> <u>McKinney</u>, 602 U.S. 339, 346 (2024).   Thus, although the Ninth Circuit has not addressed the continued viability of the "serious questions" test post-<u>Starbucks</u>, the Supreme Court's command is clear:  because there is no "clear command from Congress" to the contrary, the "serious questions" test may not be used.  <u>See</u> <u>id.</u>

Moreover, even assuming that the so-called "serious questions" test remains viable after <u>Winter</u> and <u>Starbucks</u>, it is nevertheless inapplicable here, where petitioner is seeking a mandatory injunction.

"A mandatory injunction orders a responsible party to take action."  <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &</u> <u>Co.</u>, 571 F. 3d 873, 878-79 (9th Cir. 2009) (internal citations and quotation marks omitted).  It is subject to a "doubly demanding" standard and requires the moving party to "establish that the law and facts <u>clearly favor</u> [his] position, not simply that []he is likely to succeed."  <u>Garcia v. Google, Inc.</u>, 796 F. 3d 733, 740 (9th Cir. 2015) (emphasis in original).  "In plain terms, mandatory injunctions should not issue in doubtful cases."  <u>Id.</u> (citation omitted).

Other judges in this circuit have found that the serious questions test is inapplicable when a petitioner seeks a mandatory injunction.  <u>See,</u> <u>e.g.,</u> <u>Cruz Uitz v. Noem</u>, No. cv-25-06420 MWF (AJRX), 2025 WL 2995008 (C.D. Cal. Sept. 23, 2025) (declining to adopt the serious questions test in immigration detention context because a mandatory injunction was requested); <u>Jamgotchian v. Ferraro</u>, No. 822-cv-01893 FWS KES,

4

2023 WL 2396352, at *3 n.3 (C.D. Cal. Feb. 7, 2023) ("The Court observes that some district courts decline to apply the 'serious questions' test in cases seeking a mandatory injunction on the basis that it is inconsistent with the heightened standard applicable to such relief.") (collecting cases), rev'd on other grounds, 93 F. 4th 1150.

Here, petitioner asks the court to order his release from custody or that the government afford him a pre-deprivation bond hearing. (Docket No. 2-1 at 9.)  In similar circumstances, courts have acknowledged that "direct[ing] the government to affirmatively hold new hearings it would not otherwise have held" may constitute a mandatory injunction.  Hernandez v. Sessions, 872 F. 3d 976, 998-99 (9th Cir. 2017); see also Doe v. Becerra, 787 F. Supp 3d 1083, 1090 (E.D. Cal. 2025) (acknowledging uncertainty regarding whether custody release and bond hearing requests in the immigration detention context may constitute a mandatory injunction); Salazar v. Kaiser, No. 1:25-cv-01017 JLT SAB, 2025 WL 2456232, at *8 (E.D. Cal. Aug. 26, 2025) (same).

The court finds that ordering the government to either release petitioner or to provide him with a bond hearing that the government would not have otherwise provided constitutes a mandatory injunction.  Petitioner does not merely seek to "freeze[] the positions of the parties," Heckler v. Lopez, 463 U.S. 1328, 1333 (1983); rather, petitioner asks the court to compel the government to affirmatively alter the status quo by providing him with additional procedural protections.

Accordingly, the court declines to apply the "serious

5

questions" test and therefore analyzes petitioner's motion

pursuant to the test articulated in <u>Winter</u>, 555 U.S. at 20.

II.  <u>Due Process</u>

    a.  <u>Procedural Due Process</u>

       Petitioner argues that his detention violates due

process because he was re-arrested without being provided a pre-

deprivation hearing before a neutral decision-maker. (<u>See</u> Docket

No. 3 at 16.)

       This court has now dealt with several petitions like

this one, in which it found that noncitizens present in the

United States who were never legally admitted were "applicants

for admission" under 8 U.S.C. § 1225(b) and thus subject to

mandatory detention.  <u>See</u>, <u>e.g.</u>, <u>Alonzo v. Noem</u>, No. 1:25-cv-

01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025)

("The suggestion that petitioner may evade the designation of

'applicant for admission' merely because he has already entered

the United States elides the fact that he was never lawfully

admitted."); <u>Mo v. Chestnut</u>, No. 1:25-cv-01789 WBS CSK, 2025 WL

3539063, at *2 (E.D. Cal. Dec. 10, 2025) (same); <u>Valencia v.</u>

<u>Chestnut</u>, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *3 (E.D.

Cal. Nov. 17, 2025) (same);  <u>Xavier Oliveria v. Albarran, et al.</u>,

No. 1:25-cv-01760 WBS AC, 2025 WL 3525923 (E.D. Cal. Dec. 9,

2025) (same).

       Petitioner makes no effort to distinguish his case from

the nearly identical cases in which this court specifically held

that noncitizens who have entered unlawfully, even if they were

encountered, taken into custody, and released on parole, were

"applicants for admission" subject to § 1225.  See, e.g., Oliveria, 2025 WL 3525923 (finding § 1225 applied to petitioner who had been detained after entering United States); Mo, WL 3539063, at *1 (noting that "noncitizens present in the United States who were never legally admitted [are] presumably 'applicants for admission,'" and applying § 1225); see also Liang v. Almodovar, et al., No. 1:25-cv-09322 MKV, 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025) (finding that noncitizen who unlawfully entered United States and was thereafter apprehended at the border did not effectuate a "lawful entry" into the United States and was thus subject to § 1225).

Petitioner thus presents neither facts nor arguments that distinguish his case from this court's prior decisions. Accordingly, the court again concludes that "the procedure authorized by Congress" in 8 U.S.C. § 1225(b) constitutes procedural "due process" as far as petitioner is concerned. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953); see also Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015) (for noncitizen who "never technically 'entered' the United States," "procedural due process is simply whatever the procedure authorized by Congress happens to be." (citation modified)); Grigoryan v. Barr, 959 F.3d 1233, 1241 (9th Cir. 2020) (same). And because 8 U.S.C. § 1225(b) does not "say[] anything whatsoever about bond hearings," petitioner is not entitled to one.  Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).

    b.   Substantive Due Process

Petitioner also argues that his detention violates

7

substantive due process because it is arbitrary and not "justified by a sufficient purpose." (Docket No. 3 at 13-14.) Specifically, petitioner contends that to comply with substantive due process, his detention -- which he argues is civil, and should be nonpunitive -- must be justified by a determination that he is either a danger to the community or a flight risk. (See id. at 14 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)).

Substantive due process does insulate individuals from "arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974). However, the Supreme Court's cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (citation modified). "[T]he threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Johnson v. Brown, 567 F. Supp. 3d 1230, 1251 (D. Or. 2021) (citing Lewis, 532 U.S. at 847 n.8). "Where, as here, circumstances afford reasonable time for deliberation before acting, we consider conduct to be conscience-shocking if it was taken with deliberate indifference toward a plaintiff's constitutional rights." Sylvia Landfield Tr. v. City of Los Angeles, 729 F.3d 1189.

This is not a case in which the facts justify a finding of arbitrary conduct on the part of ICE. The revocation of petitioner's release was not arbitrary. Petitioner himself

8

acknowledges ICE re-detained him for violating the terms of his release on June 30, 2025.  (See Docket No. 3 at 11.)  The government has thus provided a "reasonable justification" for re-detaining petitioner.  See Lewis, 523 U.S. at 846.  It is not the court's role to "judge the wisdom or desirability" of this justification.  See Heller v. Doe by Doe, 509 U.S. 312, 319 (1993).

Accordingly, because the government has offered a reasonable justification for petitioner's detention, petitioner's detention was not so arbitrary as to violate due process.  See Lewis, 523 U.S. at 846.

Petitioner has failed to demonstrate a likelihood of success on the merits of his procedural and substantive due process claims.  That being the case, the court "need not consider the other [preliminary injunction] factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).

IT IS THEREFORE ORDERED that petitioner's motion for a temporary restraining order (Docket No. 3) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that this matter be set for a status conference on **February 2, 2026 at 1:30pm.**  Personal appearances by counsel are required.

Dated:  January 7, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

9